UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 08-cr-69-01** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **CLYDE PONTEFRACT** | * | **MAGISTRATE JUDGE METHVIN** |

*REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DETERMINE MENTAL COMPETENCY TO STAND TRIAL*
(Rec. Doc. 76)

Before the court is defendant Clyde Pontefract's motion to determine mental competency. After conducting an evidentiary hearing on October 21, 2009, the undersigned concludes that defendant is competent to stand trial and recommends that his motion be denied.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### *Background*

Clyde J. Pontefract was initially indicted on March 11, 2008 on twenty-three counts of receiving child pornography and one count of possession of child pornography. The evidence supporting the charges was derived from a laptop seized at his trailer in Elizabeth, Louisiana, on or about November 5, 2007.

Officers later discovered additional evidence indicating that Pontefract had taken nude photographs of his own daughter. A superceding indictment was thereafter returned on April 23, 2009 which added one count of production of child pornography in violation of 18 U.S.C. §2251(a).

On August 4, 2009, defendant filed a motion for hearing to determine competency. The government opposed the motion. On August 14, the court held a telephone conference and found that counsel for defendant had sufficiently raised factual issues whether defendant is

2

competent to stand trial and afforded defendant until October 14, 2009 to submit under seal a copy of a psychological exam to be obtained at his own expense.

On October 14, 2009, counsel for defendant, having been allowed 60 days to obtain the report, filed a motion for extension of time to provide the psychiatric report on grounds that defendant's family had been unable to raise the money for it.

On October 16, 2009, a hearing was held on the motion for extension of time. On the government's motion, the court questioned Pontefract directly and extensively to determine whether there are reasonable grounds to implicate his competency to stand trial. The court concluded that Pontefract is able to understand the nature and consequences of the proceedings against him and that he is able to properly assist in his defense.  Pontefract's motion to extend time to procure a psychiatric evaluation was thus denied.

### *Issues Presented*

The sole issue presented is whether Pontefract is competent to stand trial.

### *Evidentiary Hearing*

At the hearing, Pontefract testified that he completed the 11th grade at Waterloo High School in Atwater, Ohio but then dropped out in the 12th; grew up in the same area; and has two brothers and two sisters, all living in Ohio except one brother who lives in Wisconsin[1].

The court questioned Pontefract whether he generally understood that he was being charged with receipt, possession, and production of child pornography.  Pontefract replied, "not exactly."[2]

---

[1] Tr. 10.

[2] Id.  11.

3

Pontefract confirmed to the court that Mr. Louviere had been his counsel throughout the federal proceedings and for most of the time on state charges in Allen Parish which were on hold.[3]

Mr. Louviere explained to the court that he had had conversations in the past with Pontefract when he felt that Pontefract was not comprehending everything that was going on.[4] In the summer of 2009, Louviere met with Pontefract at the Acadiana Detention Center to discuss the government's latest plea proposal. At that time, Pontefract began discussing some "private matters regarding dreams and things like that," that made Louviere feel obligated to bring up the issue of Pontefract's competency. According to Louviere:

> he literally told me he didn't know whether what he had - - what happened in the past was something he dreamed or whether it was something that really happened. It was an incident or two in his life. And I felt - - when he told me that, I said I need to have this investigated.[5]

The court questioned Pontefract about how his dreams related to his ability to assist counsel. Pontefract responded:

> I think there's two separate issues.
>
> * * *
>
> I have been asking -- at the point when Mr. Louviere showed up and I was able to see the pictures from the first 22 counts, I've been raising questions ever since then. Not as part of -- what Mr. Louviere says about the dreams is true, okay, but about the questions about I don't understand how can most of that stuff -- I won't disagree with all of it, but how can most of it be child pornography? I don't understand that. And I've been trying to read the law. I've been trying to get some way to explain things to me, and the system is just so broke, nobody is explaining

---

[3] Id. 13.

[4] Tr. 14.

[5] Id, 14, 15.

nothing to me. Now, I don't know if I'm not getting my point across to Mr. Louviere or what the deal is, but that is like one issue of why things come up.[6]

And now what he just said about the dreams, that is true, that I had just brought that up. There are many things that I still keep quiet. I'll be honest with you. I believe the cops kidnapped my daughter. I'm telling you. But I guess that will come out during the trial. I'm forced to go that way.

\* \* \*

But I'm still questioning the child pornography. I mean, I see pictures on TV of -- well, I don't know if I'm right to get into details, I guess. I don't know. But close to the same thing. And I don't understand how come mine is and what they're showing on TV isn't. So I'm trying to find the law to understand it.

The court questioned:

    So really your problem is that the legal definition of child pornography, you basically – you're trying to understand what the definition is and trying to understand what that definition is and trying to understand factually why your're charged with something that you see similar depictions of on TV?[7]

Pontefract: That's a big part of it.[8]

The following colloquy took place thereafter:

THE COURT: Right. Well, let me just say this, that legally -- and I presume you will understand this, that the government has the burden of proof at trial to prove that you violated the law, and that, you know, of course you are the person being charged. The -- there are a lot of defendants that disagree with the law, but that in itself is neither here nor there. Your attorney can explain to you, you know, as best he can, you know, what the law is and why the facts being alleged by the government arguably allege a violation of the law. That may not satisfy you. You may always disagree with what the law says and what, you know, the facts say.

But the real issue is whether or not you can sufficiently understand the factual and legal issues that you're facing and cooperate with your attorney. We don't – you know, it's not necessary that you have a law degree or that you have perfect

---

[6] Id. 15, 16.

[7] Tr. 16.

[8] Id.

understanding of everything, but simply that you have the ability mentally to discuss the charges with counsel, understand the -- your rights, understand the procedures generally about the trial, and those sorts of things.

***And just talking to you right now, you appear completely intelligent, lucid, and you're nodding your head.***

THE DEFENDANT: I'm nodding my head?

THE COURT: Nodding your head now, that you agree with me.

THE DEFENDANT: Oh, yes, ma'am.

THE COURT: You know, you don't feel like you have any problem with logical reasoning or these dreams are not –

THE DEFENDANT: The dreams are a different issue. I apologize for interrupting.

THE COURT: Right.[9]

When questioned whether his dreams created an impediment to understand the proceeding and cooperate with his attorney, Pontefract responded, "No, ma'am."[10]

Counsel for the government questioned Pontefract:

MR. SIMS: Mr. Pontefract, do you understand the charges that are against you? Do you understand what you are charged with, production?

THE DEFENDANT: Yes. But do you --

MR. SIMS: Just answer my question --

THE COURT: Slow down, please.

MR. SIMS: Do you understand you are charged with production of child pornography and that the government has charged you --

THE DEFENDANT: If somebody explains to me what child pornography is, then maybe.

---

[9] Tr. 17-18.

[10] Tr. 19.

MR. SIMS: Taking naked pictures of your daughter.

THE DEFENDANT: That's where we disagree.

MR. SIMS: I'm not asking you if you did it or not. Do you understand that that is the law?

THE DEFENDANT: No, I'm serious. I mean, I've seen on TV here recently, okay, naked girls in the shower, young girls, but they're not doing sex. So I don't understand. I know what these pictures -- I believe I know what these pictures are, okay, but --

* * *

MR. SIMS: I'm going to explain it again. Has your attorney explained to you that it is against the law for any adult -- or anyone to take a photograph of a minor that is nude, i.e., does not have clothes on? Whether you think it is okay or not okay is not an issue. Do you understand that that is what you are charged with? Has he told you that?

THE DEFENDANT: No.

MR. SIMS: He has never told you --

THE DEFENDANT: Not that I know that he explained it in that way, no.

MR. SIMS: Now that I'm explaining it to you in that way, do you understand we have charged you with doing that?

THE DEFENDANT: The way you tell me, I understand what you are telling me, but I don't understand --

MR. SIMS: Why it is illegal?

THE DEFENDANT: Yes.

MR. SIMS: But you understand what you are charged with?

THE DEFENDANT: Yes.

MR. SIMS: And you also understand you are charged with receiving child pornography on the internet? You said Limewire. Do you understand that?

THE DEFENDANT: Correct.

7

MR. SIMS: Okay. Are you able to discuss with your attorney the fact -- the things that you did or did not do as relates to downloading child pornography off the internet and taking nude pictures of your daughter? Were you able to discuss these facts with your attorney or anything --

THE DEFENDANT: I've asked a lot of questions concerning that, but I never got my answers back.

MR. SIMS: Are you able to communicate with him about these events?

THE DEFENDANT: I'm going to answer that no at this time, because I never got a lot of my answers back of explaining how -- why this is. Just like what you said, explaining why it is.

MR. SIMS: Are you able to recall the events that the government has charged you with and have any discussions with your attorney about these events, being downloading child pornography and being taking pictures of your daughter naked? Are you able to communicate that with attorney? Whether it did or did not happen is not for you to say right here, but are you able to communicate these events with your
attorney?

THE DEFENDANT: I have asked questions like that, yes.

The court again questioned Pontefract:

THE COURT: Well, you are charged with certain actions. Are you able to communicate either, yes, you did them, no, you didn't do them, or there -- you know, there is some gray area in-between? At least you're able to discuss with your attorney what the facts –

THE DEFENDANT: That is correct. But I'm not getting my answers back on those issues.

THE COURT: Yeah. I understand you have a disagreement about the law and you're not satisfied with the answers you're getting about why -- what -- why what you're charged with is against the law. And I think that's what I'm hearing is that you have an objection; nobody has given you a satisfactory explanation for why things seem unfair. Is that right?

THE DEFENDANT: Well, see, the way I look at it, too, is that I don't understand why there is not a hearing before we waste a lot of money going to trial. Okay? That is one of the -- well, many reasons why I fight so hard back. And -- to, let's say, look at each picture and determine exactly whether this is really breaking the law or not breaking the law and maybe why. As of yet I've had nobody really explain that to me.

8

THE COURT: Okay.

*Analysis*

Pontefract's counsel has raised concerns that his client is not competent to stand trial. A criminal defendant may not be tried unless he is competent. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The criminal trial of an incompetent person violates due process. Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); Drope v. Missouri, 420 U.S. 162, 171-172, 95 S.Ct. 896, 903- 904, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). Justice Kennedy described the fundamental nature of the right as follows:

> Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.

Riggins v. Nevada, 504 U.S. 127, 139-140, 112 S.Ct. 1810, 1817-1818, 118 L.Ed.2d 479 (1992) (opinion concurring in judgment) (*citing* Drope v. Missouri, 420 U.S. 162, 171-172, 95 S.Ct. 896, 903-904, 43 L.Ed.2d 103 (1975)).

The test for incompetence is also well-settled. "It is not enough for the district judge to find that 'the defendant (is) oriented to time and place and (has) some recollection of events,' but . . . the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.'" Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)(quoting from the Solicitor General's brief). Drope

9

added an additional element to the test of competency by requiring that the defendant be able "to assist in preparing his defense."  420 U.S. at 171.

Thus, to be competent, a defendant must:

1. be able to consult with the lawyer with a reasonable degree of rational understanding;
2. be able to otherwise assist in the defense;
3. have a rational understanding of the criminal proceedings; and
4. have a factual understanding of the proceedings.[11]

After questioning Pontefract at length at the hearing, the undersigned finds that he is lucid, intelligent, and has the present ability to consult with his lawyer with a reasonable degree of rational understanding.  Pontefract has a rational understanding of the proceedings against him. He has seen the photographs at issue.  He understands that he is charged with receiving, possessing and production of pornography because he questioned the law on the charges.  Although Pontefract disagrees with the law on pornography because he believes the same visual depictions can be seen on television, he clearly has the ability to work with his attorney whether in negotiating a plea or going to trial.

As to the issue of Pontefract's dreams, it is equally clear from his testimony they do not interfere with his competency to stand trial.  Pontefract he did not show any confusion or misunderstanding when questioned by the court and the government, and he has the abilit to distinguish between dreams and reality.  Pontefract testified, in fact, that he was intelligent and able to work with his attorney.  Moreover, when questioned whether he wished to continue with

---

[11] *See also* Mental Health Standard 7.4(b),  ABA CRIMINAL JUSTICE MENTAL HEALTH STANDARDS (1984) (hereinafter "Mental Health Standards").  The American Bar Association developed this set of standards for evaluating competence issues, based upon the holdings of Dusky and Drope .

his present attorney, Pontefract desired another attorney because he believes that his attorney had not sufficiently explained the charges to him. Accordingly the undersigned finds that Pontefract is competent to stand trial.

### *Conclusion*

The undersigned concludes that defendant is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. Defendant understands the proceedings against him, and has sufficient ability to consult with his attorney with a reasonable degree of rational understanding. 18 U.S.C. § 4241(d); *see also* Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Because the undersigned has so found, **IT IS RECOMMENDED** that Pontefract's motion for hearing on his competency be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within ten (10) days from the date of its service, or within the time frame authorized by Fed.R.Civ. P. 6(b), shall bar an aggrieved party from attacking the factual findings or the legal conclusions**

11

**accepted by the district court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on November 24, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)